UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEXTER BROWN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PURUSHOTTAMA SAGIREDDY, et al.,<br><br>　　　　　Defendants. | No.  2:14-cv-0338 JAM AC P<br><br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

　　　　Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court are plaintiff's first amended complaint (ECF No. 39) and motion for preliminary injunction or temporary restraining order (ECF No. 51).

I.　　　Statutory Screening of Prisoner Complaints

　　　　The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

　　　　A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  "[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

1

1  meritless legal theories or whose factual contentions are clearly baseless." Jackson v. Arizona,
2  885 F.2d 639, 640 (9th Cir. 1989) (citation and internal quotations omitted), superseded by statute
3  on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Neitzke, 490
4  U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded,
5  has an arguable legal and factual basis.  Id.

6      "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
7  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
8  what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550
9  U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
10  However, in order to survive dismissal for failure to state a claim, a complaint must contain more
11  than "a formulaic recitation of the elements of a cause of action;" it must contain factual
12  allegations sufficient "to raise a right to relief above the speculative level."  Id. (citations
13  omitted).  "[T]he pleading must contain something more . . . than . . . a statement of facts that
14  merely creates a suspicion [of] a legally cognizable right of action."  Id. (alteration in original)
15  (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d
16  ed. 2004)).

17      "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
18  relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell
19  Atl. Corp., 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
20  content that allows the court to draw the reasonable inference that the defendant is liable for the
21  misconduct alleged."  Id. (citing Bell Atl. Corp., 550 U.S. at 556).  In reviewing a complaint
22  under this standard, the court must accept as true the allegations of the complaint in question,
23  Hospital Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976), as well as construe the pleading
24  in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v.
25  McKeithen, 395 U.S. 411, 421 (1969).

26    II.    First Amended Complaint
27      The first amended complaint consists of eleven counts against twenty-five different
28  defendants.  ECF No. 39.

In Count I, plaintiff alleges that defendant Sagireddy violated his rights under the Eighth Amendment when he reduced plaintiff's dialysis treatment. Id. at 5-6.

In Count II, plaintiff alleges that defendants Naseer and Foronda were deliberately indifferent to his serious medical need when they reduced his food intake by half. Id. at 7.

In Count III, plaintiff alleges that defendants Sagireddy and Wright deliberately changed the concentration of his dialysis treatment so that it would reduce his potassium levels to the point that completing treatment would cause serious health problems. Id. at 39-40.

Count IV alleges that defendants Howell, Abirimahmud, Mofor, Acuvera, Racacho, Casino, and Tucker violated his Eighth Amendment rights when they attempted to murder him by adding potassium to his food on numerous occasions. Id. at 11-12.

Count V alleges that defendants Li, Burck, and Chipendo were deliberately indifferent to his serious medical needs when they refused to provide immediate diagnostic blood testing on plaintiff between June 2014 and November 2014. Id. at 13.

In Count VI, plaintiff alleges that defendants Beard and Duffy knew that plaintiff's life was in danger from prison staff and failed to intervene. Id. at 15-16.

Count VII is against Doe defendants and alleges that the unknown defendants are agents in the Office of Internal Affairs who failed to investigate any of plaintiff's complaints and allegations of misconduct. Id. at 17-18.

Count VIII alleges that defendant Beard violated plaintiff's rights when he failed to make the Office of Internal Affairs do its job and investigate plaintiff's allegations. Id. at 19-20.

In Count IX, plaintiff alleges that he notified defendants Malone, Barton, Eggman, and Dickinson of the attempts on his life and that they failed to report his allegations or arrange for the evidence he had collected to be retrieved. Id. at 21-22.

Count X alleges that defendant Lau deliberately failed to classify a grievance as a staff complaint. Id. at 23.

Finally, in Count XI plaintiff alleges that defendants Beard, Duffy, and Malone acted to keep his claims from being investigated in retaliation for filing civil rights complaints. Id. at 24-25.

Plaintiff seeks unspecified monetary damages, injunctive and declaratory relief, appointment of counsel, and a recommendation to the Department of Justice or Federal Bureau of Investigation to investigate his claims. Id. at 26.

### III. Claims for Which a Response Will Be Required

#### A. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "'knows of and disregards an *excessive risk* to inmate health and safety.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (quoting Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.

##### 1. Count I

In Count I plaintiff alleges that on approximately September 30, 2013, defendant Sagireddy reduced plaintiff's scheduled dialysis regimen by six hours per week. ECF No. 39 at 5. Plaintiff alleges that this reduction was done without medical cause, without conducting the proper diagnostic testing and monitoring to ensure that the reduction was safe, and with

4

knowledge that plaintiff was not receiving a potassium restricted diet.[1]  Id. at 5-6.  Plaintiff further alleges that Sagireddy knew of and disregarded the recommendation of a specialist that plaintiff receive five to six days of dialysis each week to mitigate the effects of Kyrle disease[2] and instead reduced plaintiff's weekly dialysis treatment from four days a week to three, causing plaintiff to suffer from the effects of the disease.  Id. at 6.  Plaintiff's claims against defendant Sagireddy in Count I are sufficient to state a claim for violation of his Eighth Amendment rights and a response will be required.

### 2. Count II

In Count II, plaintiff alleges that between October 2013 and December 2013, defendants Naseer and Foronda reduced his food intake by half by discontinuing the nutritional supplements that he was receiving three times a day to maintain a healthy weight.  Id. at 7.  He alleges that defendants knew that he required the supplements in order to prevent malnutrition and weight loss because he was unable to eat a substantial portion of his regular meals due to his belief that the food was being tampered with.  Id. at 7-8.  He also alleges that defendants continued to deny the supplements even after he began to show signs of physical decline.  Id. at 8.  Plaintiff's allegations are sufficient to support a claim that defendants Naseer and Foronda were aware that plaintiff required the nutritional supplements in order to get adequate nutrition and that discontinuing them would adversely affect plaintiff's health.  Defendants will therefore be required to respond to Count II.

### 3. Count III

In Count III, plaintiff alleges that on October 10, 2014, defendants Sagireddy and Wright

---

[1] In Count I, plaintiff specifically alleges that medical and prison personnel were adding potassium to his dialysis treatments and food (ECF No. 39 at 6), but as set forth in Section IV.A.1, plaintiff's conclusory allegations that he is being poisoned fail to state a claim.  However, in Count V he alleges that he was receiving a regular diet rather than a potassium restricted renal diet.  Id. at 14.

[2] Although plaintiff mentions Kyrle disease later in the section, he does not specifically identify it as the disease diagnosed by the specialist in the amended complaint.  ECF No. 39 at 6.  However, a medical record submitted with plaintiff's motion for preliminary injunction shows that the specialist referred to in the amended complaint diagnosed plaintiff with Kyrle disease and recommended dialysis five to six days a week.  ECF No. 51 at 19-20.

deliberately modified his dialysis treatment without any valid medical reason and for the express purpose of harming plaintiff. Id. at 9. Specifically he alleges that Sagireddy ordered the concentration of plaintiff's dialysis solution reduced, knowing that it would induce cardiac arrest and death if treatment was fully completed and Wright carried out the treatment despite knowing the effect it would have if plaintiff completed his treatment. Id. at 9-10. At the pleading stage, the allegations are sufficient to state a claim and defendants Sagireddy and Wright shall be required to respond to Count III.

### 4. Count V

In Count V, plaintiff alleges that defendants Li, Burck, and Chipendo failed to order "stat" blood testing of his potassium levels between June 2014 and November 2014 after he complained of symptoms indicating that he was suffering from a potassium imbalance. Id. at 13. Defendants allegedly knew that he had been diagnosed with end stage renal disease and that a potassium imbalance therefore posed a significant threat to his health. Id. Plaintiff further alleges that defendants knew that he was receiving a regular diet instead of a potassium restricted renal diet, putting him at risk for suffering a potassium imbalance. Id. at 14. Liberally construed, plaintiff has stated a claim for deliberate indifference based on defendants' alleged failure to order appropriate blood tests. Defendants Li, Burck, and Chipendo will be required to respond to Count V.

## IV. Failure to State a Claim

### A. Eighth Amendment – Failure to Protect

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The

official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

### 1. Count IV

Plaintiff alleges that defendants Howell, Abirimahmud, Mofor, Doe #4, Acuvera, Racacho, Casino, and Tucker deliberately tried to murder him by poisoning his food with potassium, which they knew would kill him because he had been diagnosed with kidney failure. ECF No. 39 at 11-12. Plaintiff's assertions that defendants were attempting to murder him are unsupported by any factual allegations, such as information regarding how he knew he was being poisoned and that defendants were the ones tampering with his food. His conclusory allegations are insufficient to state a claim and should be dismissed. Furthermore, the claim should be dismissed without leave to amend because while the court does recognize that it may be possible for plaintiff to allege facts sufficient to state a claim, neither the claim nor the parties are properly joined.

The Federal Rules of Civil Procedure allow plaintiff to join multiple claims if they are all against a single defendant, Fed. R. Civ. P. 18(a), and multiple defendants if the claims against them arise from the same transaction, occurrence, or series of transactions or occurrences and there is a question of law or fact common to all defendants, Fed. R. Civ. P. 20(a)(2). While plaintiff's claims in Counts I, II, III, and V arise out of his medical treatment for his kidney disease, Count IV is unrelated to plaintiff's medical treatment and does not involve any of the defendants in Counts I, II, III, and V. Although the conduct alleged in Count IV would impact plaintiff's health, it is unrelated to the medical care he received and involves different questions of law and fact. If plaintiff wishes to pursue his claims in Count IV, he will need to do so in a separate action.

////

2. Counts VI and VIII

There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371, 376 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Additionally, "[t]here is no respondeat superior liability under section 1983." Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). A supervisor may be liable for the constitutional violations of his subordinates if he "knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Finally, supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

In Count VI, plaintiff alleges that defendants Beard and Duffy failed to respond to his reports that prison personnel had attempted to murder him and that their failure to respond encouraged continued attempts to murder him. ECF No. 39 at 15-16. Count VIII alleges that defendant Beard failed to respond to plaintiff's reports that the CDCR's Office of Internal Affairs was obstructing justice by refusing to investigate or collect evidence of plaintiff's claims that prison personnel were trying to murder him. Id. at 19-20.

Plaintiff's claims against Beard and Duffy are similar to the claims he made against Governor Brown in the original complaint (ECF No. 1 at 6), which were dismissed because they lacked any specific allegations showing that Brown had a direct or causal connection to the alleged constitutional violations (ECF No. 10 at 4). Plaintiff's claims against Beard and Duffy

8

are equally conclusory and non-specific. ECF No. 39 at 15-16, 19-20. Plaintiff does not allege that Beard or Duffy took part in the attempts to murder him or were aware of the attempts and failed to stop them. Id. He alleges that they failed to order an investigation of his claims and his allegations that no action was taken are based solely on defendants' failure to send him a response or send investigators to collect his evidence. Id. He provides no information regarding the approximate dates he sent the complaints, how many complaints he sent, whether the complaints contained more than conclusory allegations that staff was trying to murder him, or what kind of evidence he wanted defendants to collect. Id. Plaintiff also fails to allege facts that would indicate there was a policy or practice of ignoring inmate allegations of wrongdoing. Id.

Plaintiff's conclusory allegations are insufficient to state a claim for relief and should be dismissed. Furthermore, based on plaintiff's claims in Counts VII and IX, the claims in Counts VI and VIII are related to the claims in Count IV that prison personnel were trying to poison him. Counts VI and VIII should therefore be dismissed without leave to amend because they are not properly joined with Counts I, II, III, and V.

### 3. Counts VII and IX

In Count VII, plaintiff alleges that Doe defendants 1-3, who are investigators in the Office of Internal Affairs, failed to investigate his allegations that prison personnel were trying to murder him by poisoning his food. ECF No. 39 at 17-18. Count IX alleges that defendants Malone, Barton, Eggman, and Dickinson failed to investigate his claims that prison personnel were attempting to murder him by poisoning his food and that internal affairs was refusing to investigate. Id. at 21-22. Defendant Barton is identified as the California Inspector General, defendant Malone is identified as the ombudsman within CDCR, and defendants Dickinson and Eggman are identified as members of the California State Assembly. Id. at 4.

The courts have not recognized "inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." Gomez v. Whitney, 757 F.2d 1005, 1006 (1985). As set forth above in Section IV.A.1, plaintiff's claims that prison personnel were trying to poison him are insufficient to state a claim. Absent an underlying violation of a constitutional right, plaintiff's allegations that defendants failed to

9

investigate fail to state a claim. Moreover, defendants appear to be named solely due to their positions, and beyond plaintiff's contentions that defendants did not collect the evidence that he had gathered, there are no facts to support the allegation that an investigation did not in fact take place. ECF No. 39 at 17-18, 21-22. Because Counts VII and IX fail to state a claim, they should be dismissed. The claims should further be dismissed without leave to amend because they are improperly joined to Counts I, II, III, and V.

### 4. Count X

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.")). Accordingly, the prison grievance procedure does not confer any substantive constitutional rights upon inmates and actions in reviewing and denying inmate appeals generally do not serve as a basis for liability under section 1983. Id. Put another way, prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner. The Seventh Circuit has observed:

> Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, an individual who denies an inmate appeal and who had the authority and opportunity to prevent an ongoing constitutional violation could potentially be subject to liability if the individual knew about an existing or impending violation and failed to prevent it. Jett, 439 F.3d at 1098.

Plaintiff's alleges that defendant Lau deliberately processed his staff complaint against defendant Sagireddy as a regular appeal in order to prevent an investigation into the crimes that had been committed against him. ECF No. 39 at 23. Rejection of a complaint that alleges

1  completed acts of misconduct does not state a claim for relief.  Moreover, plaintiff does not allege
2  that his complaint was rejected, only that it was processed as a regular appeal rather than a staff
3  complaint.  Id.  As such, defendant Sagireddy's actions would have still been subject to review.
4  Cal. Code Regs. tit. 15, § 3084.1.  Because of the nature of the claim, it does not appear that
5  plaintiff would be able to state a cognizable claim against defendant Lau even if he were given
6  leave to amend and Count X should therefore be dismissed without leave to amend.

7              5.   Count XI
8       Plaintiff alleges that prison officials are preventing inmate allegations of criminal conduct
9  from being investigated and that defendants Beard, Duffy, and Malone had a duty to intervene.
10 ECF No. 39 at 24.  He further alleges that they acted to keep his claims that he is being poisoned
11 from being investigated in retaliation for filing this case.  Id. at 25.  The complaint does not
12 contain any specific factual allegations regarding how prison officials that have barred
13 investigation of inmate complaints and the claims against defendants appear to be based solely on
14 their positions as supervisors.  There is nothing beyond plaintiff's conclusory allegations that
15 would support a claim that defendants are either personally blocking investigations or have
16 created a policy or practice of non-investigation.  Claims based solely on a defendant's position
17 as a supervisor do not state a claim under § 1983.  Taylor, 880 F.2d at 1045.  Even if plaintiff
18 were able to amend Count XI to state a claim, it should be dismissed without leave to amend
19 because it is not properly joined with Counts I, II, III, and V.

20             6.   Defendant Erilim
21      Plaintiff identifies Matthew Erilim as a defendant in this action (ECF No. 39 at 2, 4), but
22 does not make any allegations against him (id. at 5-25).  Defendant Erilim should therefore be
23 dismissed from this action.

24        B.   No Leave to Amend
25      If the Court finds that a complaint should be dismissed for failure to state a claim, the
26 Court has discretion to dismiss with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122,
27 1126-30 (9th Cir. 2000) (en banc).  Leave to amend should be granted if it appears possible that
28 the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Id. at 1130-31;

1  see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be
2  given leave to amend his or her complaint, and some notice of its deficiencies, unless it is
3  absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing
4  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)).  However, if, after careful consideration, it
5  is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to
6  amend.  Cato, 70 F.3d at 1005-06.

7  The undersigned finds that, as set forth above, portions of plaintiff's first amended
8  complaint fail to state a claim upon which relief may be granted.  Moreover, as set forth in the
9  sections addressing Counts IV, VI, VII, VIII, IX, and XI, even if plaintiff were able to amend
10 these counts to state cognizable claims, they are not properly joined with Counts I, II, III, and V
11 because they do not involve the same defendants, arise from the same transaction, occurrence, or
12 series of transactions or occurrences, or share a question of law or fact common to all defendants.
13 Count X should be dismissed because the nature of the claim makes amendment futile.  "A
14 district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR,
15 707 F.3d 1114, 1130 (9th Cir. 2013).

16 The undersigned therefore recommends dismissing the claims outlined above in Section
17 IV.A without leave to amend.  While leave to amend "shall be freely given when justice so
18 requires," it appears that amendment here would result in inappropriately joined claims or be
19 futile.

20 V.     Motion for Temporary Restraining Order or Preliminary Injunction

21 Also before the court is plaintiff's motion for a temporary restraining order or preliminary
22 injunction.  ECF No. 51.  A temporary restraining order is an extraordinary measure of relief that
23 a federal court may impose without notice to the adverse party if, in an affidavit or verified
24 complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage
25 will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P.
26 65(b)(1)(A).  The purpose in issuing a temporary restraining order is to preserve the status quo
27 pending a fuller hearing and the standard for issuing a temporary restraining order is essentially
28 the same as that for issuing a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush

1 & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining
2 orders and preliminary injunctions is "substantially identical"). In this instance, the court ordered
3 defendant Sagireddy to respond to the motion (ECF No. 55), meaning that the adverse party has
4 been given an opportunity to be heard. The temporary restraining order portion of the motion
5 should therefore be denied. The motion for temporary restraining order should also be denied for
6 the same reasons as the motion for preliminary injunction, set forth below.

7     In order to prevail on a motion for preliminary injunction, the moving party must
8 demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm
9 in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that the
10 relief sought is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20
11 (2008). The Ninth Circuit has held that injunctive relief may issue, even if the moving party
12 cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and
13 a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary
14 injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and
15 that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d
16 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive
17 relief should be denied if the probability of success on the merits is low. Johnson v. California
18 State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) ("'[E]ven if the balance of
19 hardships tips decidedly in favor of the moving party, it must be shown as an irreducible
20 minimum that there is a fair chance of success on the merits.'" (quoting Martin v. Int'l Olympic
21 Comm., 740 F.2d 670, 675 (9th Cir. 1984))).

22     Because the function of a preliminary injunction is to preserve the status quo pending a
23 determination on the merits, Chalk v. United States Dist. Court, 840 F.2d 701, 704 (9th Cir.
24 1988), there is heightened scrutiny where the movant seeks to alter rather than maintain the status
25 quo, Dahl v. HEM Pharm. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as
26 opposed to prohibitory, injunctions are "subject to a heightened scrutiny and should not be issued
27 unless the facts and law clearly favor the moving party"). Plaintiff seeks preliminary injunctive
28 relief in the form of increased dialysis treatments.

Plaintiff currently receives dialysis three days a week and seeks to increase his treatments to four to six, four-and-a-half hour sessions per week. ECF No. 51 at 2-3. He alleges that he is suffering irreparable harm due to the currently inadequate dialysis treatment he is receiving, which he alleges is in direct conflict with an outside specialist's recommendation. Id. at 6-7.

Defendant Sagireddy opposes plaintiff's motion on the grounds that it is not supported by competent evidence, plaintiff's alleged irreparable injury is speculative, and plaintiff's current treatment is adequate to treat his condition. ECF No. 56 at 3-4.

In order to prevail on a motion for preliminary injunction, plaintiff must show that he is likely to succeed on the merits or that there are serious questions going to the merits. This case involves a claim of deliberate indifference, and in order to succeed on this claim, plaintiff will need to establish that defendant Sagireddy was deliberately indifferent to his serious medical need. Jett, 439 F.3d at 1096. A difference of opinion between plaintiff and defendant – or even between defendant and another medical professional – regarding the appropriate treatment for plaintiff is not enough to establish a deliberate indifference claim. Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058. To establish a difference of opinion rises to the level of deliberate indifference, "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Although plaintiff argues that Sagireddy's 2013 decision to reduce his dialysis treatments to three days a week, and the continuation of this treatment are medically unacceptable, he has offered nothing to establish that he is qualified to offer an opinion on the suitability of his treatment plan. Plaintiff's disagreement with the course of treatment and belief that it is harmful is insufficient to establish that the decision was medically unacceptable. Plaintiff's claim that defendant Sagireddy went against the treatment plan established by his previous doctors and recommended by a specialist also fails to establish that Sagireddy's current treatment plan is medically unacceptable. First, plaintiff's allegations show only that defendant Sagireddy had a difference of opinion with other healthcare providers as to the appropriate frequency and length of plaintiff's dialysis treatments. This does not establish that Sagireddy's actions were medically unacceptable. Sanchez, 891 F.2d at 242. Additionally, according to plaintiff's documentation,

the specialist who made the recommendation for dialysis six days a week appears to be a dermatologist, not a nephrologist like defendant Sagireddy, and the recommendation was made in 2012. ECF No. 51 at 19. It is not clear that the specialist would be qualified to evaluate the appropriateness of plaintiff's dialysis treatment or that a recommendation from 2012 is still relevant to plaintiff's current condition and treatment.

In response to defendant Sagireddy's assertion that plaintiff's dialysis schedule is adequate for his current needs (ECF No. 56 at 9-10, ¶¶ 3, 5, 9) plaintiff argues that there is substantial evidence that he is suffering irreparable harm due to inadequate dialysis, but that his records were confiscated by correctional staff. ECF No. 66 at 4, 8. However, plaintiff offers no specifics as to what was confiscated beyond the description of the documents as medical records. Id. Plaintiff also argues that he can prove that his treatment is inadequate if he is given access to his medical records and can obtain an objective review of his condition (id. at 12), but given defendant Sagireddy's sworn statement that plaintiff's most recent lab results show his current treatment is adequate,[3] it appears that plaintiff's claim that he can prove inadequacy is based solely on speculation and what he believes an independent review will uncover. As for plaintiff's allegations that medical staff are falsifying his lab results to show that his current treatment is sufficient, even if this is true, he offers no evidence that defendant Sagireddy is aware of the falsified results and is relying on them despite knowing they are not accurate. ECF No. 66 at 33-55.

Plaintiff's allegations currently amount to no more than a difference of opinion as to his proper treatment, which does not state a cognizable claim. Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058. As a result, he has not established that he is likely to succeed on the merits or

////

---

[3] The court notes that defendant Sagireddy has not produced copies of any of the medical records that he relied on in making his declaration. ECF No. 56. However, he declares under penalty of perjury that the contents of his declaration are true and correct. To the extent plaintiff also makes declarations and provides medical records related to his lab results, they are not relevant to his current condition as they all deal with results obtained in 2014 or earlier. ECF No. 66 at 27, 33-55.

that there are serious questions going to the merits.[4]

For the same reasons plaintiff has not shown that he is likely to prevail on the merits or that there are serious questions going to the merits, plaintiff's allegations regarding the harm he is suffering are also insufficient to show that he will suffer irreparable injury in the absence of an injunction. Plaintiff's allegations are largely based on speculation, which is insufficient to demonstrate a risk of immediate and irreparable injury. Caribbean Marine Services Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.") (quoting Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984)). Although plaintiff claims to have evidence of the injury he is suffering or will suffer, he fails to provide any.

Finally, the court does not find it appropriate to issue injunctive relief in the form of increased dialysis when plaintiff does not dispute that he frequently leaves his dialysis sessions early and refuses blood draws necessary to monitor his condition and his declarations and attachments confirm that he has engaged in this kind of behavior in the past. ECF No. 66 at 39, 41, 57-63.

For the reasons set forth above, plaintiff's motion for preliminary injunction should be denied.

VI.     Request for Appointment of Counsel

In his reply in support of his motion for a temporary restraining order or preliminary injunction, plaintiff also asks the court to appoint counsel and an expert witness. ECF No. 66 at 21.

Federal Rule of Evidence 706 authorizes the appointment of a neutral expert witness, with expenses shared by the parties. The appointment of an independent expert witness pursuant to Rule 706 is within the court's discretion, Walker v. American Home Shield Long Term Disability

---

[4] Plaintiff has also indicated in the first amended complaint that he did not exhaust his administrative remedies because they were unavailable to him. ECF No. 39 at 5, 7, 9, 13. This also calls plaintiff's chances of success on the merits into question because defendants may challenge the claimed unavailability.

16

1 Plan, 180 F.3d 1065, 1071 (9th Cir. 1999), and may be appropriate when "scientific, technical, or
2 other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a
3 fact in issue," Ledford v. Sullivan, 105 F.3d 354, 358-59 (7th Cir. 1997).  However, the statute
4 authorizing plaintiff's in forma pauperis status does not authorize the expenditure of public funds
5 for expert witnesses.  See 28 U.S.C. § 1915; Tedder v. Odel, 890 F.2d 210, 211-12 (9th Cir.
6 1989) (per curiam) (expenditure of public funds on behalf of indigent litigant is proper only when
7 authorized by Congress); Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987) (no provision
8 to pay fees for expert witnesses).  The federal courts have uniformly held that an indigent prisoner
9 litigant must bear his own costs of litigation, including witnesses.  Tedder, 890 F.2d at 211 (in
10 forma pauperis statute, 28 U.S.C. § 1915, does not authorize waiver of fees or expenses for an
11 indigent's witnesses).  In this case, it appears that plaintiff is seeking to have the court appoint an
12 expert witness to advocate on his behalf.  However, even if plaintiff is seeking a neutral expert,
13 the court does not find that the issues in this case are so complicated that the testimony of a
14 neutral expert would be warranted.

15     Plaintiff has also requested appointment of counsel, and in contrast to the procedures
16 under Federal Rule of Evidence 706, the expenses of an expert retained on behalf of a prisoner
17 litigant may be recovered if preauthorized and arranged by counsel appointed by this court's Pro
18 Bono Panel.  However, the United States Supreme Court has ruled that district courts lack
19 authority to require counsel to represent indigent prisoners in § 1983 cases, Mallard v. United
20 States Dist. Court, 490 U.S. 296, 298 (1989), but in certain exceptional circumstances, the district
21 court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), Terrell
22 v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36
23 (9th Cir. 1990).

24     "When determining whether 'exceptional circumstances' exist, a court must consider 'the
25 likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims
26 *pro se* in light of the complexity of the legal issues involved.'"  Palmer v. Valdez, 560 F.3d 965,
27 970 (9th Cir. 2009) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).  The burden
28 of demonstrating exceptional circumstances is on the plaintiff.  Id.  Circumstances common to

17

most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.

In recommending denial of plaintiff's motion for preliminary injunction, the court has already found that plaintiff has not established a likelihood of success on the merits. Moreover, this case is in its early stages and the court does not currently find exceptional circumstances warranting appointment of counsel. Though plaintiff cites the need for counsel in order to facilitate communication with an expert witness and to obtain discovery, this case is in its early stages and discovery has not yet begun. The first amended complaint has just been screened and defendants will not be required to respond to the complaint until these findings and recommendations have been considered by the district judge. Moreover, plaintiff's complaint indicates that he did not exhaust his administrative remedies prior to bringing suit because they were unavailable to him. ECF No. 39 at 5, 7, 9, 13. It is therefore possible that when defendants respond to the complaint it will be with a motion for summary judgement based on plaintiff's failure to exhaust his administrative remedies rather than with an answer. Should defendants file an exhaustion motion, discovery and any examination of the merits would likely be on hold until the issue of whether administrative remedies were available to plaintiff was decided. At this stage of the case, the court finds plaintiff capable of articulating his claims and arguments without the assistance of counsel. For these reasons, the court finds that appointment of counsel is not warranted at this stage of the case and the request will be denied without prejudice.

VII.  Summary

Defendant Sagireddy must answer Count I. Defendants Naseer and Foronda must answer Count II. Defendants Sagireddy and Wright must answer Count III. Defendants Li, Burck, and Chipendo must answer Count V.

Counts IV and VI through XI and defendants Howell, Abirimahmud, Mofor, Acuvera, Racacho, Casino, Tucker, Beard, Duffy, Does #1-4, Malone, Barton, Eggman, Dickinson, Lau, and Erilim should be dismissed because plaintiff has not explained what any of the defendants did to violate his rights. He has only stated that they have violated his rights. Counts IV, VI, VII, VIII, IX, and XI should be denied without leave to amend because even if plaintiff can explain

1  how defendants violated his rights, the claims should be brought as a separate case because they
2  are not sufficiently related to Counts I, II, III, and V.  Count X should be dismissed without leave
3  to amend because the type of claim plaintiff is making is not a valid claim.  Defendant Erilim
4  should be dismissed because plaintiff does not make any claims against him.

5  Plaintiff's motion for temporary restraining order or preliminary injunction should be
6  denied because plaintiff has shown only that he disagrees with defendant Sagireddy's treatment.
7  He has not shown that he has a fair chance of success on the merits.  Plaintiff also has not shown
8  that he will suffer irreparable injury.

9  Plaintiff's request for an expert witness will be denied because the issues in this case are
10  not complicated enough to require a neutral expert.  His request for appointment of counsel will
11  also be denied because the court does not find that exceptional circumstances exist at this early
12  stage.

13  Accordingly, IT IS HEREBY ORDERED that plaintiff's request for appointment of
14  counsel and an expert witness (ECF No. 51) is denied.

15  IT IS FURTHER RECOMMENDED that:

16  1. Defendants Sagireddy, Naseer, and Foronda be ordered to respond to Counts I, II, and
17  III of the first amended complaint, as set forth above in Section III, within thirty days from the
18  date of the district judge's review and adoption of the instant findings and recommendations.

19  2. Service of Counts III and V of the first amended complaint be ordered on defendants
20  Wright, Li, Burck, and Chipendo, as set forth above in Section III.

21  a. The Clerk of the Court be ordered to provide to plaintiff a blank summons, a
22  copy of the pleading filed February 11, 2015 (ECF No. 39), four USM-285 forms, and
23  instructions for service of process on defendants Wright, Li, Burck, and Chipendo.

24  b. Within thirty days of service of an order adopting these findings and
25  recommendations, plaintiff shall return the Notice of Submission of Documents with the
26  completed summons, the completed USM-285 forms, and five copies of the endorsed first
27  amended complaint filed February 11, 2015.  Plaintiff need not attempt service on defendants and
28  need not request waiver of service.  Upon receipt of the above-described documents, the court

will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs. Defendants Wright, Li, Burck, and Chipendo will be required to respond to plaintiff's allegations as set forth above within the deadlines stated in Federal Rule of Civil Procedure 12(a)(1).

        c. Failure to comply with the order will result in a recommendation that the claims against defendants Wright, Li, Burck, and Chipendo be dismissed.

    3. Counts IV and VI through XI and defendants Howell, Abirimahmud, Mofor, Acuvera, Racacho, Casino, Tucker, Beard, Duffy, Does #1-4, Malone, Barton, Eggman, Dickinson, Lau, and Erilim be dismissed without leave to amend as set forth above in Section IV.

    4. Plaintiff's motion for preliminary injunction or temporary restraining order (ECF No. 51) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2016

                              */s/ Allison Claire*
                              ALLISON CLAIRE
                              UNITED STATES MAGISTRATE JUDGE